IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| United States of America,<br><br>               Plaintiff,<br><br>v.<br><br>Misty Y. Angell,<br><br>               Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br><br>Case No. 2:17-cr-23-CW<br><br>District Judge Clark Waddoups |
| --- | --- |

Before the court are Defendant Misty Y. Angell's pending motions for mistrial and for judgment of acquittal, both of which were raised during the course of her trial. (Dkt. Nos. 79 & 85.) After a two-day trial, the jury found Ms. Angell guilty of possessing, or aiding and abetting possession of, stolen mail and of possessing methamphetamine. (Dkt. No. 92.) The court now addresses each motion separately.

### Motion for Mistrial

On the first day of its presentation of evidence, the United States called Officer Steven Ray Rawson to the stand. (Dkt. No. 79.) Officer Rawson testified that he was one of two officers who spoke with Ms. Angell in the parking lot of the Walmart store in Magna, Utah, after an eye witness reported seeing a vehicle, matching the one Ms. Angell was entering, driving slowly down a Magna street while a passenger got out and went through mailboxes. Officer Rawson testified that mail was found in the car below Ms. Angell's seat and that, after being Mirandized, Ms. Angell took responsibility for the mail. The officer paraphrased her statement as follows:

> She said that they were going to [Walmart] and she decided to get out of the car and go check mailboxes . . . . but she said that she—

> we had determined it was over near that location, Patrick Drive and
> off of 31st is where she remembers, somewhere in there, and that
> she was walking and checking mailboxes. And, you know, she
> remembers running from the witness, I think . . . .

(Rawson Transcript p. 17.)

During the course of Officer Rawson's testimony, the prosecutor and witness had the

following exchange:

> Q        So at the conclusion of this investigation, did Ms. Angell
> ever follow up with you on it?
>
> A        Did she follow up with me?
>
> Q        Yeah. Did she ever call you to change her statement or—

(*Id.* at p. 22.) Before the prosecutor completed this question, defense counsel objected and asked

to approach the bench. (*Id.*) While at the bench, defense counsel moved for a mistrial "on the

grounds that he is commenting on the fact that—if she's under investigation, she has a right to

remain silent. And he's implying if she did not follow up with him in some way, she might be

guilty . . . . That is a comment on her right to remain silent . . . ." (*Id.* at p. 22–23.) After an initial

discussion at the bench in which the United States opposed the defense's motion, the court

excused the jury so that the parties could fully argue the issue. (*Id.* at p. 23.) After hearing their

arguments, the court posed options to the parties: that the court (1) grant the motion immediately

and declare a mistrial; (2) reserve ruling on the issue, allowing the court to rule on it after further

instruction to the jury and briefing from the parties; or (3) reserve the motion but give an

immediate curative instruction. (*Id.* at p. 26.) Ultimately the court reserved ruling on the basis

that the court could adequately protect Ms. Angell's rights by proceeding, issuing a curative

instruction to the jury, and allowing the parties to submit further briefing on the issue. (*Id.* at p. 27.)

After the jury had returned, the court asked the court reporter to reread the questions at issue and instructed the jury to completely disregard the prosecutor's most recent questions and any answers and to understand that a person under investigation has a right to remain silent and has no obligation to correct any statement made. (*Id.* at p. 27–28.) The court further instructed that the jury was not to draw any inferences about Ms. Angell's innocence or guilt from the questions or any answer the witness may have given. (*Id.*)

Between the first and second days of trial, each party submitted briefing in support of its position. (See Dkt. Nos. 81 & 82.) In its brief, objecting to the motion, the United States argued that this case is analogous to *Greer v. Miller*, 483 U.S. 756 (1987), and that the motion should be denied based on the facts that Officer Rawson never answered the problematic question, that the court issued a curative instruction, and that the prosecutor did not (and would not for the duration of the trial) further pursue the issue. (Dkt. No. 81.) Ms. Angell argued that the prosecutor's questions constituted a "use" of her silence in a manner that could not be cured. (Dkt. No. 82.)

The trial then proceeded through the presentation of evidence with no further comment on Ms. Angell's right to remain silent. After the close of the government's case, Ms. Angell rested without putting on any witnesses of her own. Before closing arguments, the court gave each party the opportunity to make additional arguments on the motion for mistrial, which the defendant declined and the government declined other than to emphasize to the court that review of the transcript revealed Officer Rawson had not responded to the prosecutor's question as the defense had suggested in its brief. (Closing Transcript 34–35.)

In closing argument, however, the prosecutor again raised the issue of Ms. Angell's silence by referring to the jury instruction stating that the guilt of another does not preclude Ms. Angell from culpability. (*Id.* at pp. 58–59.) He further added that "[t]hus far we have learned very little about what the defense believes has happened in this case." (*Id.* at p. 59.) Defense counsel again objected, and the court again issued a curative instruction, reminding the jury "that the defense in this case has no burden to present any evidence or to testify. The burden is . . . upon the United States to prove its case and it must prove it beyond a reasonable doubt." (*Id.* at p. 60.) Then during its own closing, defense counsel, in addressing the responding officers' incident reports, stated that it was "troubling" that the responding officers wrote their incident reports based on memory and without following up with Ms. Angell to confirm the details. (*Id.* at pp. 64–65.) In light of this statement, the prosecution sought permission from the court to further explore on rebuttal the officer's failure to follow up with Ms. Angell and the fact that Ms. Angell also did not follow up. (*Id.* at p. 70.) The court denied this request. (*Id.*)

These statements fall into two separate but related categories—comments on Ms. Angell's right to remain silent during the arrest and investigation of the crime and comments on her right not to testify or otherwise put on a defense. The court must now determine whether these comments rise to the level of a constitutional violation. *See United States v. Barton*, 731 F.2d 669, 674 (10th Cir. 1984) (asserting that "[p]rosecutorial comment upon an accused's failure to testify violates the self-incrimination clause of the fifth amendment of the Constitution"); *Doyle v. Ohio*, 426 U.S. 610, 619–20 (1976) (reversing habeas petitioners' convictions on the grounds that use of their silence "at the time of arrest and after receiving

Miranda warnings," for impeachment purposes, "violated the Due Process Clause of the Fourteenth Amendment").

In assessing whether these statements merit mistrial, the government argues for the application of a two-part test set forth in *Greer* and *United States v. Oliver*, 278 F.3d 1035 (10th Cir. 2001) (Dkt. No. 81), while the defense states a five-factor test from *United States v. Lauder*, 409 F.3d 1254 (10th Cir. 2005), but analyzes the facts of this case according to *Greer* and *Oliver* (Dkt. No. 82). In *Oliver*, the Tenth Circuit observed that the Supreme Court spelled out a two part inquiry in *Greer* in which the court must first determine "whether the prosecutor's question constituted a 'use' of the defendant's Miranda rights." *Oliver*, 278 F.3d at 1039. If the court concludes the prosecutor was not using the defendant's Miranda rights, "the second step is to ask whether the question so unfairly prejudiced the defendant as to rise to the level of a due process violation." *Id.* If the answer to either question is affirmative, the error warrants mistrial, "provided that the error is not harmless." *See id.*

*Lauder* sets out a five-factor test for determining whether prosecutorial comment on a defendant's silence is harmless, stating that courts consider "(1) the use to which the prosecution puts the silence, (2) who elected to pursue the line of questioning, (3) the quantum of other evidence indicative of guilt, (4) the intensity and frequency of the reference, and (5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instruction." 409 F.3d at 1261. In short, both tests consider the prosecutor's use of the defendant's silence and then put the problematic comments "in the context of the whole trial." *Oliver*, 278 F.3d at 1040.

The circumstances in this case do not necessitate a mistrial under either test because the statements were not effectively "used" because the jury was never allowed to consider them. The Supreme Court has stated there can be no improper "use" of the defendant's having exercised her *Miranda* rights if defendant's silence "was not submitted to the jury as evidence from which it was allowed to draw any permissible inference." *Greer*, 483 U.S. at 764–65. That is the case here. As in *Greer*, 483 U.S. at 759, 764–65, and *Oliver*, 278 F.3d at 1040, Officer Rawson never answered the question implicating her silence and the court issued an immediate curative instruction to the jury that neither the question nor any inferences that could be drawn from it were evidence for them to consider. Similarly, the prosecutor's statement that the Ms. Angell had not put on a defense was met with a curative instruction as well as instructions in the preliminary and general instructions that she had no burden to do so and that arguments presented by counsel were not evidence. Although the comments were improper, they were of limited effect as Ms. Angell's silence was not actually admitted into evidence and no use was actually made of the statements.

To the extent that, as the defense argues (Dkt. No. 82, p. 3), the jury cannot "unhear" the prosecutor's questions and statements, the court is satisfied that in context of the entire trial Ms. Angell was protected from the improper statements of the prosecution. The Supreme Court in *Greer* stated that the proper inquiry is whether prosecutorial misconduct is of such "significance to result in the denial of a defendant's right to a fair trial." *Id.* at 766. Both the Supreme Court in *Greer*, and the Tenth Circuit in *Oliver* and *United States v. Lane*, 883 F.2d 1484, 1493–95, were satisfied that the defendants' rights were adequately protected where defense counsel immediately objected to a question regarding the defendant's post-*Miranda* silence, even when

the witness actually answered the question as in *Lane*, and the court issued an immediate curative instruction.

Here Ms. Angell's right to a fair trial was not jeopardized by the prosecutions questions and statement in its closing argument. The prosecutor's question to Officer Rawson was addressed in the same manner as the above-referenced cases, and although regrettable, the prosecutor's comment during closing argument does not change this conclusion. *See United States v. Houghton*, 66 F.3d 339 (10th Cir. 1995) (unpublished table decision) (concluding that a prosecutor's repeated statements to the jury that it "ha[d] a right to expect to hear" from the defendants why they believed it was acceptable to "make those lies," including one defendant who had not testified at trial, did not merit mistrial because the statements did not appear to affect the verdict, were isolated, and were adequately addressed by the general jury instructions). In this case the United States presented the jury with strong evidence, including an admission of checking mailboxes, and testimony of the lab technician who verified with certainty that the substance on Ms. Angell's person was methamphetamine. Each comment upon Ms. Angell's silence was immediately met by a curative instruction to the jury not to consider the prosecutor's question or statement or any inference that might be drawn from it. And the jury was also instructed in both the court's preliminary and general jury instructions that Ms. Angell was not obligated to put on a defense, that the burden of proof belonged entirely to the government, that questions and arguments made by counsel do not constitute evidence, and that the government must prove its case beyond a reasonable doubt. (Dkt. Nos. 87 & 88.) Further, the court "presume[s] that juries follow their instructions." *Houghton*, 66 F.3d at * 3 (citing *United States v. Coleman*, 7 F.3d 1500, 1506 (10th Cir. 1993).

Therefore, the court DENIES Ms. Angell's motion for mistrial.

## Rule 29 Motion

Defense counsel moved the court for judgment of acquittal at the close of the government's case in chief and again after the defense rested. (Closing Transcript pp. 20 & 30.) Ms. Angell's motion asserted that there was a failure of proof of the intent element of the possession of stolen mail charge and that there were defects in the chain of custody of the methamphetamine. She argued that these failures by the United States entitle her to a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

In deciding a Rule 29 motion, the court must determine whether the "evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. The court may, where it deems necessary, set aside the jury's guilty verdict." *Id.* 29(c)(2). Reversal of a conviction is only appropriate where "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hale*, 762 F.3d 1214, 1222–23 (10th Cir. 2014) (quoting *United States v. Grassie*, 237 F.3d 1199, 1207 (10th Cir. 2001)). In deciding such a motion, the court defers to the jury verdict, gives no weight to conflicting evidence, and makes no credibility determinations. *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015). Therefore, to resolve Ms. Angell's motion, the court must determine whether, considering all evidence and drawing all reasonable inferences "in the light most favorable to the government," *Hale*, 762 F.3d at 1222, a rational jury could have found Ms. Angell guilty beyond a reasonable doubt of possession, or aiding and abetting the possession of, stolen mail and of possession of methamphetamine.

First, a reasonable jury could have convicted on the mail charge. To convict Ms. Angell of possession of stolen mail, the United States needed to prove (1) that Ms. Angell possessed the specific item of mail alleged in count 1 of the indictment, (2) that the specific item was stolen from a mail receptacle or mail route, and (3) that she knew the item was stolen. 18 U.S.C. § 1708. To prove she aided and abetted, it needed to prove that someone other than Ms. Angell had satisfied the three elements of possession of stolen mail and that Ms. Angell intentionally associated herself in some way with that person's crime. *Nye & Nissen v. United States*, 336 U.S. 613, 618–19 (1949).

The jury concluded the government had proven each element of both possession and aiding and abetting possession. (Dkt. No. 92.) There was sufficient evidence to support that conclusion. The testimony of Officers Rawson and Nielson linked Ms. Angell to the stolen mail, as they testified that the mail was in her lap and under her seat when they approached the vehicle in the Walmart parking lot and that they had returned the confiscated piece of mail to the address shown on the envelope. The person to whom the mail was returned testified that the envelope was returned to him and its contents matched the mail identified on the indictment. He had disposed of the envelope itself. James Young's testimony provided support in particular of the second element that the mail was stolen from a mail receptacle. He saw and heard the car the officers later observed Ms. Angell in driving down the street from which the indicted piece of mail was stolen. Mr. Young also testified that he saw a woman opening mailboxes at different addresses on that same street. Although his physical description of the woman did not match Ms. Angell, a reasonable jury could infer that persons from the car took mail from the specific address and that Ms. Angell was in the car or that Mr. Young was merely mistaken in his

memory of the woman's physical description but not mistaken that he saw a person removing mail from mailboxes on that street and then get back in the car in which Ms. Angell and the mail were later found. Perhaps the strongest evidence upon which the jury could rely was Officer Rawson's testimony that Ms. Angell took responsibility for the stolen mail that was found in the car and acknowledged having run from Mr. Young. Upon this evidence, a reasonable jury could have concluded Ms. Angell either possessed, or aided and abetted the possession of, the stolen mail identified in the indictment, and the court will not now interrupt the jury's conclusion.

Second, a reasonable jury could have convicted Ms. Angell of possession of methamphetamine, despite evidence of labeling errors between the two bags at the laboratory. To convict on the possession of methamphetamine charge, the United States needed to prove beyond a reasonable doubt that Ms. Angell knowingly possessed a controlled substance and that the substance contained a detectable amount of methamphetamine. 21 U.S.C. § 844. There was sufficient evidence of Ms. Angell's guilt on this charge. The baggies that were ultimately shown to contain methamphetamine were found in her bra during a routine search while she was being processed at the Salt Lake County jail on the mail charge. Both Travis Smoot, an inspector for the United States Postal Service, and Deputy Koryn Alejandre were present during the search and testified about the confiscation of white crystalline substance in baggies from her person. Inspector Smoot then provided detailed testimony about keeping the baggies secured in his folder in the car for the remainder of the evening before securing it in a vault at his office. He also testified about conducting a preliminary test that suggested the substance was methamphetamine and then sending the substance away to the state crime lab where it was tested and confirmed to be methamphetamine. Next Amberlee Neibaur testified regarding the lab's

intake and labeling process as well as her qualifications, experience, and testing methods. She then stated that she was "100% sure" the substance contained in the baggies confiscated from Ms. Angell's person was methamphetamine. Upon these statements, a reasonable jury could have found the elements of possession of methamphetamine were met in this case. And the court will not now disrupt that conclusion.

Thus, the court DENIES Ms. Angell's Rule 29 motion for judgment of acquittal.

DATED this 12th day of July, 2017.

BY THE COURT:

Clark Waddoups
United States District Judge